**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**BATESVILLE DIVISION**

**ANGELA McILLWAIN** **PLAINTIFF**

**v.** **1:08CV00057-WRW**

**DALE WEAVER, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS SHERIFF OF SHARP COUNTY, ARKANSAS, *et al.*** **DEFENDANTS**

**ORDER**

Pending are Defendants' Motions for Summary Judgment (Doc. Nos. 27, 40). Plaintiff has responded,[1] and Defendants City of Ash Flat and Bobby Woods have replied.[2] Also pending is Plaintiff's Motion for Partial Summary Judgment (Doc. No. 62). Defendants have responded.[3] For the reasons set out below, Defendants Sharp County, Sheriff Dale Weaver, Deputy Gerald Traw, and Officer Tamara Roberts's Motion is GRANTED in part and DENIED in part; Defendants City of Ash Flat and Officer Bobby Woods's Motion is GRANTED in part and DENIED in part; and Plaintiff's Motion is DENIED.

## I. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided on purely legal grounds.[4] The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that

[1]Doc. Nos. 53, 56.

[2]Doc. No. 65.

[3]Doc. Nos. 68, 70.

[4]*Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); Fed. R. Civ. P. 56.

> properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.[5]

The Court of Appeals for the Eighth Circuit has cautioned that summary judgment is an extreme remedy that should only be granted when the movant has established a right to the judgment beyond controversy.[6] Nevertheless, summary judgment promotes judicial economy by preventing trial when no genuine issue of fact remains.[7] I must view the facts in the light most favorable to the party opposing the motion.[8] The Eighth Circuit has also set out the burden of the parties in connection with a summary judgment motion:

> [T]he burden on the party moving for summary judgment is only to demonstrate, *i.e.*,"[to point] out to the District Court," that the record does not disclose a genuine dispute on a material fact. It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion. Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue. If the respondent fails to carry that burden, summary judgment should be granted.[9]

Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment.[10]

---

[5]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

[6]*Inland Oil & Transport Co. v. United States*, 600 F.2d 725, 727 (8th Cir. 1979).

[7]*Id.* at 728.

[8]*Id.* at 727-28.

[9]*Counts v. MK-Ferguson Co.*, 862 F.2d 1338, 1339 (8th Cir. 1988) (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-74 (8th Cir. 1988) (citations omitted)).

[10]*Anderson*, 477 U.S. at 248.

## II. BACKGROUND[11]

At about 7:10 p.m. on November 10, 2006, the Sharp County dispatcher received a call that a car almost hit another car, then wrecked at the intersection of Highway 56 and Highway 167. Officer Bobby Woods arrived at the scene a few minutes later. Plaintiff was the driver of the car; one of her tires had blown out. Officer Woods asked Plaintiff if she needed help, but Plaintiff declined the offer. Officer Woods left.

At about 9:20 p.m., Officer Woods returned to the scene. Because Plaintiff was still sitting in her car, Officer Woods checked on her again. When he approached the car, he told Plaintiff that he smelled marijuana. Plaintiff denied that she, or anyone she had been around that day, smoked marijuana.[12]

Through the window, Officer Woods noticed a police radio scanner in the car. The scanner was allegedly tuned in to the Sharp County frequency. Plaintiff testified that Officer Woods told her that "people who have scanners, travel with scanners, normally transport drugs."[13] Officer Woods asked to search Plaintiff's car, but she did not consent. Over Plaintiff's protest, Officer Woods and other officers who had arrived -- Deputy Gerald Traw, and Deputy Jeremy Qualls (not a party in this case) -- searched Plaintiff's car. Plaintiff was agitated and began cursing at the officers. She continued swearing at the officers until she was arrested for disorderly conduct, a misdemeanor. Then Plaintiff was put in a police car while the officers finished their search. The officers found digital scales, but no contraband.

---

[11]Unless otherwise noted, the facts in the Background section are taken from the parties' Statements of Undisputed Material Facts. Doc. Nos. 29, 42, 63.

[12]Doc. No. 42, Exhibit B.

[13]*Id*.

When the search was finished, the officers took Plaintiff to the Sharp County Jail. Plaintiff's and Defendants' accounts of what happened next vary. Plaintiff alleges that she was strip searched in a room with no privacy curtain.[14] She maintains that a female, Officer Tamara Roberts Taylor ("Officer Roberts"), and Officer Woods were in the room with her throughout the entire strip search.[15] According to Plaintiff, she began fighting when Officer Roberts attempted taking Plaintiff's clothes off with Officer Woods in the room. Plaintiff testified that after she starting fighting, "this other guy came in to hold me down, to help hold me, and I'm . . . just like naked in front of these two guys."[16]

Officer Roberts contends that when Plaintiff and Officer Woods arrived at the Jail, Officer Woods instructed her to search Plaintiff for contraband.[17] Officer Roberts asserts that she was alone with Plaintiff in a holding cell behind a curtain when Officer Roberts began patting Plaintiff down.[18] Officer Roberts stated that, during the pat-down, she found a lump about the size of a dime in "the bra area under [Plaitniff's] right arm."[19] Officer Roberts asked Plaintiff to remove her shirt, then Officer Roberts allowed Plaintiff to put her shirt back on because Plaintiff was uncomfortable being undressed.[20] Officer Roberts said she then left the cell and told Officer

---

[14]*Id*.

[15]*Id*.

[16]*Id*.

[17]Doc. No. 42, Exhibit D. Both Officer Roberts's and Sheriff Weaver's deposition testimony contain hearsay statements about what Officer Woods told them. See Doc. No. 42, Exhibit D and Doc. No. 63, Exhibit C. Plaintiff did not object to the Court considering those statements. The hearsay statements, however, were irrelevant to all claims on which summary judgment was granted.

[18]*Id*.

[19]*Id*.

[20]*Id*.

Woods she thought Plaintiff had contraband in her bra.[21] Officer Roberts maintains that Officer Woods told her to wait until he spoke with Sheriff Dale Weaver before continuing her search.[22]

Sheriff Weaver testified that Officer Woods called him at home when Plaintiff would not allow Officer Roberts to search her.[23] Sheriff Weaver stated that he asked Officer Woods if Plaintiff was "going to be booked and put into population."[24] After Officer Woods said that Plaintiff was going to be put in popluation, Sheriff Weaver told him: "Well, we follow our jail policy. Jail policy says everyone that goes in the back is to be searched and put in a uniform."[25] When asked specifically if it is a policy of Sharp County to strip search people arrested on misdemeanor charges, Sheriff Weaver testified that it is Sharp County's written policy that

> if they're arrested and brought in and released immediately, they wouldn't be strip-searched. But if they're arrested and put in the back in population, they would be strip-searched. Anybody that goes in population has to be searched and placed in a uniform if they go in population, whether they're charged with a misdemeanor or felony. That's anyone.[26]

Sheriff Weaver did not recall whether he directed that Plaintiff be strip searched, and did not recall whether he was told that male officers would be present during any search.[27]

---

[21] *Id.*

[22] *Id.*

[23] Doc. No. 63, Exhibit C.

[24] *Id.*

[25] *Id.*

[26] *Id.*

[27] *Id.*

Deputy Traw testified that he came into the room with Plaintiff only after Officer Roberts began calling for help.[28] Officer Roberts testified the same.[29] Plaintiff concedes she was physically resisting the search.[30] Deputy Traw testified that he took one of Plaintiff's wrists and held it until the search was complete.[31] He also testified that Plaintiff was wearing uniform pants when he entered the room, and that he saw Plaintiff with her shirt off, but bra on.[32]

I am not aware of any deposition testimony by Officer Woods.

In any event, Plaintiff was searched. At some point during the search, there were 2-4 men in the room with Plaintiff and Officer Roberts. Plaintiff stated that she called Officer Roberts a bitch and told Officer Roberts that she would kick her in the face.[33] Plaintiff testified that she was fighting.[34] Officer Roberts removed Plaintiff's pants and replaced them with uniform pants. It is disputed whether Plaintiff's panties were ever removed.[35] Plaintiff's shirt was taken off and a uniform shirt put on her. Plaintiff's bra was removed, but it is disputed whether Plaintiff's breasts were exposed.[36] When Plaintiff's bra was removed, the officers found methamphetamine, Xanax tablets, and a piece of burnt aluminum foil.

---

[28]Doc. No. 63, Exhibit E.

[29]Doc. No. 63, Exhibit F.

[30]Doc. No. 42, Exhibit B.

[31]Doc. No. 63, Exhibit E.

[32]*Id*.

[33]Doc. No. 42, Exhibit B.

[34]*Id*.

[35]Compare Doc. No. 42, Exhibits B and D.

[36]Doc. No. 42, Exhibit 4 and Doc. No. 63, Exhibit E.

When Plaintiff was searched, Sharp County had in effect a written policy that arrestees would not be strip searched unless there was a reasonable suspicion that the arrestee was carrying weapons or contraband on her person.[37] The policy provided that the following constitute reasonable suspicion: "(1) The arrest is for a felony. (2) The arrest is for a misdemeanor or violation which involves weapons or contraband. (3) The arrestee has a prior record of convictions or unresolved arrests for felony offenses or for misdemeanors or violations involving weapons or contraband."[38] The policy goes on to read: "[r]easonable suspicion may be based on any facts concerning the arrestee, the nature of the crime for which the arrest was made, or the circumstances of the arrest, provided that such facts could reasonably give rise to a suspicion that the arrestee is concealing weapons or contraband on his or her person."[39]

Under the policy, the term "strip search" does not include:

> pat down searches at the time of the arrest; handcuffing of arrestees at the time of the arrest; inventory of personal effects; pat down, searches of pockets, purses, wallets, hats, shoes, jackets, and similar exterior items of clothing at the time of booking; changing detainees in the Detention Facility into uniforms; or other policies applied to detainees in the Detention Facility once they have been processed into the general population.[40]

Plaintiff was charged in a November 17, 2006, criminal information from the Circuit Court of Sharp County, Arkansas, with furnishing prohibited articles, possession of a controlled substance with intent to deliver, possession of an instrument of crime (the digital scales), disorderly conduct, and possession of drug paraphernalia.

---

[37]Doc. No. 28, Exhibit 4.

[38]*Id.*

[39]*Id.*

[40]*Id.*

On April 9, 2007, Sharp County Circuit Court Judge Harold Erwin heard arguments in connection with a motion to suppress filed in Plaintiff's Sharp County criminal case.[41] At the suppression hearing, Officer Woods testified that he had probable cause to search Plaintiff's car based on the smell of marijuana and the police scanner.[42] Plaintiff's counsel argued that "[a] summons should have been issued, not an arrest warrant. The arrest was illegal, sorry, you know, that evidence is not going to be admissible."[43] Plaintiff's counsel also argued that there was no probable cause to search Plaintiff's car, and asked the court "to find that this was an improper arrest, search and everything incident to it would be fruit of the poisonous tree and not admissible at trial."[44] The court denied the motion to suppress.[45]

On November 1, 2007, Plaintiff pled no contest to the charges of disorderly conduct and possession of an instrument of crime.[46]

Plaintiff filed this case on November 3, 2008, alleging that Defendants violated: 42 U.S.C. §§ 1983 and 1988; the substantive due process clause of the 14th Amendment; the 4th Amendment; the 8th Amendment; and "[a]ny and all other State Pendant Claims."[47] Plaintiff also alleged that Sheriff Weaver, Sharp County, Arkansas, and the City of Ash Flat, Arkansas, failed

---

[41]Doc. No. 42, Exhibit C.

[42]*Id*.

[43]*Id*.

[44]*Id*.

[45]*Id*.

[46]Doc. No. 42, Exhibit F. Plaintiff contends that the disorderly conduct charge was *nolle prossed*, but the Order for Nolle Prosequi shows that Counts One, Two, and Five of the Information (furnishing prohibited articles, possession of a controlled substance with intent to deliver, and possession of drug paraphernalia, respectively) were *nolle prossed*. Doc. No. 59, Exhibit C.

[47]Doc. No. 1.

to properly train and supervise their employees.[48] Defendants deny all allegations of constitutional or state law violations.

## III. DISCUSSION

### A. Fourteenth Amendment -- Substantive Due Process

Defendants City of Ash Flat and Bobby Woods assert that Plaintiff's unreasonable search claim should be analyzed under the Fourth Amendment, not the Fourteenth Amendment.[49] Plaintiff's Response did not address Defendants' contention.[50] Rather, Plaintiff's Response analyzed her claims under the Fourth Amendment.[51]

"[W]here a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims."[52] The Fourth Amendment -- which reads, in part: "[t]he right of the people to be secure in their persons . . . against unreasonable searches . . . shall not be violated . . . "[53] -- provides an explicit textual source of constitutional protection, and the Eighth Circuit Court of Appeals has analyzed strip search cases, and more invasive body cavity search cases, under the Fourth Amendment.[54]

---

[48]*Id*.

[49]Doc. No. 41.

[50]Doc. No. 58.

[51]*Id*.

[52]*County of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998) (quoting *Albright v. Oliver*, 510 U.S. 266, 273 (1994)).

[53]U.S. CONST. amend. XIV.

[54]See, e.g., *Schmidt v. Magyari*, 557 F.3d 564, 572 (8th Cir. 2009) (Fourth Amendment analysis of strip search claims where officer directed arrestee to lower jeans so officer could photograph tattoo at pubic area); *Serna v. Goodno*, 567 F.3d 944 (8th Cir. 2009) (Fourth Amendment analysis of body cavity search of involuntarily committed patient); *United States v.*

Because the Fourth Amendment provides the explicit textual source of constitutional protection against unreasonable searches, and because Plaintiff did not rebut Defendants' assertion that her claims should be analyzed under the Fourth Amendment rather than the Fourteenth Amendment,[55] summary judgment is granted on this issue in favor of all Defendants. Further, the facts of this case generally do not support a Fourteenth Amendment claim.

**B. Fourth Amendment - Unreasonable Search**

In the 2009 case of *Serna v. Goodno*,[56] the Eighth Circuit Court of Appeals discussed in detail *Bell v. Wolfish*,[57] the United States Supreme Court case that sets the standard under which courts analyze body cavity or strip searches allegedly conducted in violation of the Fourth Amendment. The Eighth Circuit began its discussion by quoting the *Bell* balancing test:

> The test of reasonableness . . . requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.[58]

---

*Williams*, 477 F.3d 974 (8th Cir. 2007) (Fourth Amendment analysis where officer reached inside suspects underwear in search of drugs); *Richmond v. City of Broolyn Ctr.*, 490 F.3d 1002 (8th Cir. 2007) (Fourth Amendment / qualified immunity analysis where officer conducted a strip search in a hotel room); *Smook v. Minnehaha County*, 457 F.3d 806 (8th Cir. 2006) (Fourth Amendment analysis of partial strip search of juvenile); *Franklin v. Lockhart*, 883 F.2d 654 (8th Cir. 1989) (Fourth Amendment analysis of body cavity search); and *Jones v. Edwards*, 770 F.2d 739 (8th Cir. 1985) (Fourth Amendment and strip search of man arrested for failing to sign a summons).

[55]See *Goff v. Nix*, 803 F.2d 358, 371 (8th Cir. 1986) (in case challenging visual body cavity search, plaintiff's allegations of violations of the Fourteenth Amendment were not explicitly addressed at trial or on appeal and were rejected).

[56]567 F.3d 944 (8th Cir. 2009). Although *Serna* involved alleged Fourth Amendment violations by an involuntarily committed patient, the standard for analysis is the same for pretrial detainees and those involuntarily confined.

[57]441 U.S. 520 (1979).

[58]*Serna*, 567 F.3d 944, 949 (8th Cir. 2009) (quoting *Bell v. Wolfish*, 441 U.S. 520, 559 (1979)).

In *Bell*, the plaintiffs challenged a policy at a center housing pretrial detainees that required the detainees to expose their body cavities as part of a strip search that was conducted after each visit with a person from outside the center. Under the strip search policy, if the inmate was male, he was required to lift his genitals and spread his buttocks for visual inspection; a female's vaginal and anal cavities were visually inspected.[59] Officials maintained that the policy was necessary both to find contraband, and to deter the smuggling of contraband into the facility.

The district court in *Bell* upheld the strip search, but prohibited the body cavity search unless there was probable cause that an inmate was carrying contraband. Because there was only one instance in which contraband was found during a body cavity search, the court of appeals affirmed. The Supreme Court, though, concluded that the body cavity searches did not violate the Fourth Amendment,[60] and noted:

> [t]hat there has been only one instance where an MCC inmate was discovered attempting to smuggle contraband into the institution on his person may be more a testament to the effectiveness of this search technique as a deterrent than to any lack of interest on the part of the inmates to secrete and import such items when the opportunity arises.[61]

The Supreme Court concluded that the challenged visual body-cavity inspections can be conducted on less than probable cause because of the balance of the significant and legitimate

---

[59]*Bell*, 441 U.S. at 558 n.39.

[60]*Id*. at 558.

[61]*Id*. at 559.

security interests of the facility against the privacy interests of the inmates.[62] It is clear under *Bell* that it is not necessary to have probable cause to perform a strip search.

In the Eighth Circuit, an officer must have reasonable suspicion that an individual arrested for a misdemeanor is carrying contraband before a strip search may be performed.[63] Reasonable suspicion is less than probable cause.[64] Under the reasonable suspicion standard, an officer must have "specific objective facts and rational inferences that they are entitled to draw from those facts in light of their experience."[65]

In *Serna*, the Eighth Circuit Court of Appeals found that suspicion should be treated as part of the scope, manner, or justification factors of the *Bell* balancing test.[66] In that case, Serna was detained at a treatment facility.[67] A cell-phone case was found in the common area of the facility, and cell phones were considered a security and treatment risk.[68] Staff at the facility searched the common area and watched a surveillance tape, but they neither found the phone nor determined who dropped the case.[69] Administrators then conducted visual body cavity searches

---

[62]*Id*. at 560. In *Serna*, the Eighth Circuit Court of Appeals noted that in *Bell* the United States Supreme Court "adopted a general tone of deference to detention-center officials." *Serna*, 567 F.3d at 950. The Eighth Circuit also noted that cases after *Bell* contained the same general tone of deference as in *Bell* and used the same reasoning as *Bell*. *Id*.

[63]See *Jones v. Edwards*, 770 F.2d 739 (8th Cir. 1985).

[64]*Hunter v. Auger*, 672 F.2d 668, 674 (8th Cir. 1982).

[65]*Id*. (citing *Terry v. Ohio*, 392 U.S. 1, 21, 27 (1968)).

[66]*Serna*, 567 F.3d at 950-51.

[67]*Id*. at 946.

[68]*Id*.

[69]*Id*.

of all patients.[70] Serna filed suit alleging, among other things, that the search was unreasonable under the Fourth Amendment. The district court granted summary judgment, finding that the search was not constitutionally unreasonable. The Eighth Circuit Court of Appeals affirmed.

With respect to suspicion, officials did not suspect that Serna, in particular, possessed the sought-after phone. Serna had never possessed any contraband during his three years at the facility. Defendants maintained that administrators' interest in ensuring security at a facility justified the search. Further, administrators had evidence regarding a cell phone. The Eighth Circuit found that "[t]hese facts indicate that the general justification for a search was based upon concrete information and not merely upon 'perceived security concerns.'"[71]

Otherwise with respect to the scope and manner of the search in *Serna*, the Eighth Circuit pointed out that the body cavity searches were performed in private bathrooms, not in public or semi-public areas.[72] Further, there were no extraneous personnel or patients present and the staff performed the searches "in a professional manner" in same-sex teams of two.[73] The Eighth Circuit also considered that the search was only visual -- it did not involve any touching -- and was not conducted in an abusive manner.[74] Based on these facts, the Eighth Circuit found that the search was not unreasonable.[75]

Turning now to this case, Sharp County had in place a written strip search policy that required reasonable suspicion that a person arrested for a misdemeanor was concealing weapons

---

[70]*Id*.

[71]*Id*. at 953.

[72]*Id*. at 954.

[73]*Serna*, 567 F.3d at 954.

[74]*Id*.

[75]*Id*.

or contraband on their person before a strip search of that person could be conducted. However, there is testimony in the record by Sheriff Weaver,[76] Officer Roberts,[77] and Officer Woods[78] that the policy is that any arrestee who will be put in general population will be strip searched. Based on Defendants' own testimony, there is a genuine issue of material fact as to what the Sharp County policy or custom was with respect to strip searches, and whether that policy was constitutional.

Even if a policy or custom concerning strip searches is unconstitutional, a particular search may have been conducted under circumstances that do not violate a plaintiff's constitutional rights. Assuming, for argument's sake, that Sharp County's policy is unconstitutional, if Defendants here had reasonable suspicion to search Plaintiff and the scope and manner of the search was otherwise reasonable, then Plaintiff's constitutional rights would not have been violated. Defendants City of Ash Flat and Officer Woods argue just that.

With respect to reasonable suspicion, Plaintiff had a police scanner in her car. In Officer Woods's experience, people who travel with police scanners normally transport drugs. During the search of Plaintiff's car, Officer Woods found digital scales, which can be used for weighing drugs. Officer Woods also testified that he smelled marijuana on Plaintiff. Plaintiff contests that fact.[79]

---

[76]Doc. No. 63, Exhibit 3.

[77]Doc. No. 28, Exhibit 2; Doc. No. 42, Exhibit C.

[78]Doc. No. 42, Exhibit C.

[79]Plaintiff's Response asserts that Officer Woods did not have probable cause to search her car. Sharp County Circuit Court Judge Harold S. Erwin found probable cause. Plaintiff pled no contest to the possession of an instrument of crime charge -- which stemmed from the digital scales found during the search of Plaintiff's car. Plaintiff cannot question probable cause for the search here, because finding there was no probable cause would necessarily imply the invalidity of Plaintiff's state-court conviction of possession of an instrument of crime. See *Heck v.*

But even assuming that Officer Woods had reasonable suspicion to search Plaintiff, there are genuine issues of material fact as to the other circumstances of the manner and scope of the search. Plaintiff alleges Officer Woods was in the room at the time the search started; Defendants deny that allegation. Plaintiff alleges the search was conducted in an open cell; Defendants contend that the search at least began behind a curtain that had been pulled closed. Plaintiff alleges she was naked in front of two men; Defendants disagree.

As a side note, Defendants Sharp County, Sheriff Weaver, Officer Roberts, and Deputy Traw point out "that the very contraband being searched for was found on the Plaintiff and thus was not introduced into the holding facility."[80] I cannot consider the fruit of the search in determining reasonable suspicion to conduct the search. Further, Plaintiff contends she was confrontational because there was a male -- or men -- in the room during the search. If Defendants are suggesting that Plaintiff was confrontational because she had something to hide, I cannot consider the credibility of Plaintiff's testimony at this point. Defendants City of Ash Flat and Officer Woods include in their Statement of Undisputed Facts that Plaintiff smoked methamphetamine before her tire blew out, and that Plaintiff's drug use had an affect on the way she acted the night of her arrest.[81] Again, I cannot consider Plaintiff's credibility now.

---

*Humprey*, 512 U.S. 477, 486-87 (1994) (court must consider if ruling in a 1983 suit would necessarily imply the invalidity of the conviction). Plaintiff's Complaint also challenges her arrest and detention -- rather than the issuance of a summons -- for disorderly conduct. Because Plaintiff pled guilty to that charge, I will not consider her challenge to the underlying arrest and detention.

[80]Doc. No. 28.

[81]Doc. No. 42.

Genuine issues of material fact make summary judgment improper for all pending motions for summary judgment on the Fourth Amendment claim, except as to Deputy Traw -- which will be explained below.

The strip search of a detainee performed by a member of the opposite sex, in the absence of a special circumstance, violates a detainees limited right to privacy.[82] The special circumstance might be chaos in a cell block or no other same-sex employees available when the need is urgent,[83] but there should be some justification of the presence or participation of an opposite-sex officer. For example, during an emergency:

> the officers in the affected areas require the assistance of officers stationed elsewhere. In such cases, it appears to be eminently reasonable that the nearest officers should be able to render assistance, regardless of their sex. Any temporary violation of [detainee] privacy that might occur would be justified by the over-riding necessity to protect the safety of both [detainees] and officers.[84]

Based on Plaintiff's testimony, as well as the testimony of Deputy Traw and Officer Roberts, it appears that Deputy Traw came to the cell where Plaintiff was being searched only after Plaintiff began physically resisting Officer Roberts's search efforts. Officer Roberts called for help, and Deputy Traw responded and assisted to protect Officer Roberts. It seems to me that responding to a call for help to hold a detainee who is physically resisting a search is the type of special circumstance that would justify an officer of the opposite sex being present during a strip search. Deputy Traw's assistance did not violate Plaintiff's constitutional right.

---

[82]See *Canedy v. Boardman*, 16 F.3d 183, 187 (7th Cir. 1994).

[83]*Cookish v. Powell*, 945 F.2d 441, 446-47 (1st Cir. 1991).

[84]*Id*. (internal citation omitted).

Even if Deputy Traw's participation violated Plaintiff's right to privacy, he is entitled to qualified immunity. No reasonable officer in Deputy's Traw's position would understand that his actions violated any clearly established right.

**C. Eighth Amendment Claims**

The Eighth Amendment protects those already convicted of a crime.[85] Because Plaintiff was not convicted at the time of the alleged violations, her Eighth Amendment claim fails. Summary judgment on Plaintiff's Eighth Amendment claim is granted as to all Defendants.

**D. State Law Claims**

Plaintiff alleges state law violations in her Complaint, but does not identify which laws Defendants allegedly violated. Defendants City of Ash Flat and Officer Woods point this out in their Motion for Summary Judgment. Like Plaintiff's Complaint, Plaintiff's Response is silent as to which violations of state law she alleges. Summary judgment on Plaintiff's state law claims is granted as to all Defendants.

**E. Failure to Train**

There are limited circumstances in which a municipality can be found liable under § 1983 because of a failure to properly train employees.[86] The failure to properly train police may serve as the basis for liability under § 1983 "only where the failure to train amounts to deliberate indifference to the rights of person with whom the police come into contact."[87]

---

[85]See *Bell v. Wolfish*, 441 U.S. 520, 531 (1979).

[86]See *City of Canton v. Harris*, 489 U.S. 378, 387 (1989).

[87]*Id*. at 388.

Sharp County's written policy on strip searches differs from what Sheriff Weaver, Officer Woods, and Officer Roberts testified was As evidence that Officer Woods was properly trained, Defendants City of Ash Flat and Officer Woods offer the City's training requirements and Officer Woods's Commission on Law Enforcement Standards and Training Notice of Course Completion. Showing that Officer Woods was certified, however, is not sufficient to shift the burden to Plaintiff to show that there is a genuine issue for trial.[88]

Based on Sheriff Weaver's, Officer Woods's, and Officer Robert's testimony that all arrestees going to general population are strip searched, there is a genuine issue of material fact as to Sharp County's strip search policy or custom.

Further, "a single violation of constitutional rights could trigger municipal liability, where the violation is accompanied by a showing that the municipality had 'failed to train its employees to handle recurring situations presenting an obvious potential for such a violation.'"[89] In determining whether the need for training is obvious, courts should look to whether an employee violated a "'clear constitutional duty' and whether there were 'clear constitutional guideposts' for municipalities in the area."[90]

As set out above, there is a clear constitutional duty not to strip search misdemeanor offenders without reasonable suspicion that the arrestee is carrying contraband or weapons on her person. Sharp County recognized this duty in its written policy. Further, there are clear constitutional guideposts for the manner and scope of a strip search.

---

[88]See *Anderson v. Roberts*, 823 F.2d 235, 239 (8th Cir. 1987).

[89]*Szabla v. City of Brooklyn Park*, 486 F.3d 385, 393 (8th Cir. 2007) (quoting *Bd. of the Commissioners v. Brown*, 520 U.S. 397, 409 (1997)).

[90]*Id.* (internal citations omitted).

A sheriff may be held liable for failing to train if: (a) the training practices were inadequate; (b) the failure to train is "a deliberate and conscious choice;" and (c) the deficiency in training procedures actually causes a plaintiff's harm.[91] For liability to attach, a plaintiff must show that "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that [the sheriff] can reasonable be said to have been indifferent to the need."[92]

Sheriff Weaver testified that the policy was to strip search all arrestees going to general population. Officer Roberts testified likewise. There is evidence that training practices were inadequate. That there is a written policy requiring reasonable suspicion to search misdemeanor arrestee calls into question whether the alleged failure was a deliberate choice; and it is a question of fact whether any alleged failure to train caused Plaintiff's harm -- if she was harmed.

Because there are genuine issues of material fact in connection with Plaintiff's failure to train claim, both Defendants' Motions for Summary Judgment are denied on this issue.

**F. Qualified Immunity**

Separate Defendants Weaver, Woods, and Roberts may be entitled to qualified immunity, but there are so many facts in dispute at this point that it is not possible to rule on this issue. "Where questions of historical fact exist, the jury must resolve those questions so that the court may make the ultimate legal determination of whether officers' actions were objectively reasonable in light of clearly established law."[93]

---

[91]*Ambrose v. Young*, 474 F.3d 1070, 1079 (8th Cir. 2007) (quoting *Andrews v. Fowler*, 98 F.3d 1069, 1076 (8th Cir. 1996)).

[92]*Id*. at 1079-80.

[93]*Littrell v. Franklin*, 388 F.3d 578, 586 (8th Cir. 2004).

**CONCLUSION**

Based on the findings of fact and conclusions of law above, Defendants' Sharp County, Sheriff Weaver, Deputy Traw, and Officer Roberts's Motion for Summary Judgment (Doc. No. 27) is GRANTED as to Deputy Traw on the Fourth Amendment Claim, and GRANTED as to all Defendants on Plaintiff's Fourteenth Amendment, Eighth Amendment, and state law claims. That Motion is DENIED as to all other issues. Defendants' City of Ash Flat and Officer Woods's Motion for Summary Judgment (Doc. No. 40) is GRANTED as to Plaintiff's Fourteenth Amendment, Eighth Amendment, and state law claims, but is otherwise DENIED. Plaintiff's Motion for Partial Summary Judgment (Doc. No. 62) is DENIED.

The claims remaining for trial are Plaintiff's Fourth Amendment claims (except as to Deputy Traw) and Plaintiff's failure to train claims.

IT IS SO ORDERED this 22nd day of February, 2010.

/s/ Wm. R. Wilson, Jr.___________
UNITED STATES DISTRICT JUDGE